# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Steven Ringelberg, | Case No.: 2:17-cv-01788-JAD-PAL |
| Plaintiff | |
| v. | **Order Granting Partial Summary Judgment and Denying Motions to Bifurcate and Seal Exhibits** |
| Vanguard Integrity Professionals-Nevada, Inc., et al., | [ECF Nos. 112, 116, 175, 176, 178] |
| Defendants | |

This is a contentious break-up between attorney Steven Ringelberg and two affiliated companies that he worked or provided services for—Vanguard Integrity Professionals-Nevada, Inc., and Vanguard Integrity Professionals, Inc. Ringelberg sues for employment-law violations, breached promises, and various torts. The Vanguard companies crossclaim for fiduciary breaches, professional-responsibility violations, and a declaration that the settlement agreement that Ringelberg signed after the parties' relationship deteriorated in 2015 bars all of his claims. That settlement agreement lies at the heart of this litigation: the Vanguard entities contend that it releases both of them from liability to Ringelberg, but he interprets it far more narrowly.

The parties cross-move for summary judgment. The Vanguard entities argue that all of Ringelberg's claims are precluded by the settlement agreement or fail for other reasons.[1] Because Ringelberg contends that Vanguard Integrity Professionals-Nevada, Inc. ("Vanguard Nevada") is a stranger to the settlement agreement, he seeks summary judgment on that entity's

---

[1] ECF No. 175.

release-based crossclaims.[2]  Defendants also move to bifurcate the trial of this case into two phases: enforceability of the settlement agreement and liability/damages.[3]  I find that the settlement agreement is unambiguous and it does not release Ringelberg's claims against Vanguard Nevada, so I grant Ringelberg's motion for summary judgment on Vanguard Nevada's first, second, and third counterclaims.  But the agreement does release most of Ringelberg's claims against the other Vanguard entity, so I enter summary judgment in favor of Vanguard Integrity Professionals, Inc ("Vanguard Inc") on all the released claims.  The absence of genuine issues of fact on Ringelberg's employment-law and intentional-misrepresentation claims earns Vanguard Nevada summary judgment on those.

The net result of these dispositive motions is that this case moves forward on Ringelberg's fifth, sixth, and eighth claims against Vanguard Nevada and his eighth and eleventh claims against Vanguard Inc., and the Vanguard companies proceed on their fourth, fifth, and sixth counterclaims.  And because I resolve the settlement-agreement-enforceability issues as a matter of law in this order, leaving none for trial, I deny the motion to bifurcate as moot.

## Background

The Vanguard group of companies is a collection of affiliated entities that provide computer security, administrative software, and cybersecurity services.  It was started by Ronn Bailey in the mid-1980s.[4]  Most relevant to this dispute are two of those entities: Vanguard Nevada and its wholly owned subsidiary Vanguard Inc.[5]  Bailey owns all of parent company Vanguard Nevada's stock through his trust.

---

[2] ECF No. 178.

[3] ECF No. 112.

[4] ECF No. 175-26 at 2.

[5] *Id*. at 3.

Ringelberg was hired on as General Counsel at Vanguard in May 2007.[6] Over the next several years, he wore many hats in the organization and performed various roles.[7] In June 2010, Ringelberg switched from a payroll-based employee who received paychecks and W-2s to a retainer-based agreement with Vanguard Integrity Professionals, Inc.[8] Under this new arrangement, he sent monthly invoices to the company on Ringelberg Law LLC and Ringelberg Consulting letterhead and received 1099s.[9]

Ringelberg claims that Bailey made a "word bond" promise to him in 2014 for 10% of Vanguard Nevada's stock and also promised to pay past-due bonuses and accrued vacation pay.[10] But things changed after he witnessed sexually harassing conduct by Bailey and confronted him with a remedial plan to address it on May 5, 2015.[11] Ringelberg was notified via letter dated May 14, 2015, that his services were being discontinued, and he never received the promised stock, bonuses, or vacation pay.[12]

On July 1, 2015, Ringelberg , Bailey, Vanguard Inc, and Bailey's trust entered into a Settlement Agreement and Release in which they mutually released certain claims.[13] But hostilities persisted, culminating in Vanguard Inc seeking a protective order against

---

[6] ECF No. 183-3.

[7] ECF Nos. 183-1, 183-4, 183-6, and 183-7.

[8] ECF Nos. 175-3, 175-6 at 4.

[9] *See* ECF Nos. 183-9, and 183-15.

[10] ECF Nos. 87 at 11–13, and 183-1, ¶ 43.

[11] ECF No. 183-1 at 6–7.

[12] ECF No. 175-13.

[13] ECF No. 175-2 at 2.

Ringelberg.[14]  The Vanguard group also hired a private investigator to put a GPS tracker on Ringelberg's car to track his movements.[15]

Ringelberg claims he was also negotiating a second deal with the Vanguard defendants at that same time—one for him "to return to work" on defendants' payroll.[16]  But when the Vanguard defendants learned that he had "filed a claim for unpaid bonuses with the Commissioner of Labor" and a wrongful-termination claim with the EEOC, they "withdrew their offers of re-employment."[17]  The Vanguard defendants maintain that they broke off their relationship with Ringelberg due to "serious disagreements concerning [his] management style, his decision making," his lack of a properly formed business entity, and "his failure to follow the directions of his client [Vanguard Inc]."[18]

Ringelberg filed this action on New Year's Eve 2017 in the District of Columbia, and it was transferred here.[19]  His claims fall into three categories: employment-law violations, unfulfilled promises of work-related benefits, and privacy torts.[20]  The Vanguard companies countersue Ringelberg.  Their claims generally embody two themes: Ringelberg breached the settlement agreement by filing this suit, and he violated his fiduciary duties and the rules of professional conduct in his representation of the Vanguard companies.[21]

---

[14] ECF Nos. 175-21 and 175-22.

[15] ECF No. 184-7.

[16] ECF No. 183-1 at 6–8.

[17] *Id*. at 8.

[18] ECF No. 172 at ¶ 23.

[19] ECF No. 1 (complaint); ECF No. 22 (transfer order).

[20] Although Ringelberg's Third Amended Complaint also contains claims against Bailey, he voluntarily dismissed those claims on March 26, 2018.  *See* ECF No. 124.

[21] ECF No. 172.

The Vanguard defendants move for summary judgment. They argue that the settlement agreement and release bars all of Ringelberg's claims against both of them, or his claims fail for a number of other reasons.[22] Ringelberg relies on the settlement agreement, too. But he contends that it offers no relief for Vanguard Nevada, who is a stranger to the agreement, so he moves for summary judgment on Vanguard Nevada's counterclaims that rely on the release.[23] Defendants also move to bifurcate the trial of this action into two phases: (1) the scope and enforceability of the settlement agreement, and (2) liability and damages; and they move to seal five exhibits to their motions.[24] I consider each motion in turn.[25]

## Discussion

## I.     The summary-judgment motions [ECF Nos. 175 and 178]

The principal purpose of the summary-judgment procedure is to isolate and dispose of factually unsupported claims or defenses.[26] The moving party bears the initial responsibility of presenting the basis for its motion and identifying the portions of the record or affidavits that demonstrate the absence of a genuine issue of material fact.[27] If the moving party satisfies its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show a genuine issue for trial.[28]

---

[22] ECF No. 175.

[23] ECF No. 178.

[24] ECF Nos. 112, 116, 176.

[25] I find all of the motions discussed in this order suitable for disposition without oral argument. LR 78-1.

[26] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[27] *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

[28] Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Auvil v. CBS 60 Minutes,* 67 F.3d 816, 819 (9th Cir. 1995).

Who bears the burden of proof on the factual issue in question is critical.  When the party moving for summary judgment would bear the burden of proof at trial, "it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[29]  Once the moving party establishes the absence of a genuine issue of fact on each issue material to its case, "the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense."[30]  When instead the opposing party would have the burden of proof on a dispositive issue at trial, the moving party doesn't have to produce evidence to negate the opponent's claim; it merely has to point out the evidence that shows an absence of a genuine material factual issue.[31]  The movant need only defeat one element of the claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[32]  "When simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of"—and against—"both  motions before ruling on each of them."[33]  I consider the parties' claims and arguments in light of these principles.

---

[29] *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir.1992) (citation and quotations omitted)).

[30] *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir.1991) (citation omitted).

[31] *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990); *Celotex*, 477 U.S. at 323–24.

[32] *Celotex*, 477 U.S. at 322.

[33] *Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (citing *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two,* 249 F.3d 1132, 1134 (9th Cir. 2001)).

## A.     Effect of the settlement agreement on the parties' claims

Key to the viability of many of the parties' claims is the scope of the settlement agreement.  Everyone agrees it's enforceable;[34] they just disagree about whom it benefits.  Defendants contend that the settlement agreement's release of claims broadly includes all claims against both of them, so it bars each of Ringelberg's claims in this case.  Ringelberg counters that the agreement does not include—and thus has no impact on his claims against—Vanguard Nevada.

There are four parties to the settlement agreement: (1) Ringelberg, identified as "VENDOR"; (2) Bailey and (3) the Bailey Living Trust dated 12/31/92, collectively identified as "BAILEY"; and (4) "Vanguard Integrity Professionals, Inc.," identified as "VANGUARD."[35] Vanguard Nevada is not a party to this agreement.  Vanguard Integrity Professionals, Inc. is the only Vanguard entity identified in the agreement's introductory paragraph and signature block; there is no provision that otherwise defines "VANGUARD" or the parties to the agreement.[36]

The agreement contains a mutual release of claims.  It states that VENDOR **Ringelberg**

> **releases and forever discharges VANGUARD and BAILEY, including in BAILEY's individual/personal capacity, their predecessors, successors, assigns, agents, contractors and attorneys** of and from all claims, obligations, losses and liabilities, known or unknown, asserted or unasserted of whatever nature, now existing or hereinafter arising, relating in VENDOR's prior employment with and provision of services as a VENDOR to VANGUARD, and any and all claims, obligations, losses and liabilities, known or unknown, asserted or unasserted of whatever nature, now existing or hereinafter arising, related to VENDOR's relationship and/or interactions with BAILEY in any capacity.[37]

---

[34] Indeed, both sides plead claims for damages for its breach.  *See* ECF No. 87 at 30; ECF No. 172 at 40–44, 73–74.

[35] ECF No. 175-2 at 2 (settlement agreement).

[36] *See generally id.*

[37] *Id.* at 3, § 2.02(b) (emphasis added).

Though this provision releases claims against more entities and persons than just the named parties to the agreement, the release benefit flows in only one direction—*down* the organizational chart. So, Ringelberg released his "existing or [t]hereinafter arising" claims against Vanguard Inc and that subsidiary company's "predecessors, successors, assigns, agents, contractors and attorneys,"[38] but he didn't release claims up the corporate chain to Vanguard Inc's parent, Vanguard Nevada. Ringelberg thus did not release claims he may have against Vanguard Nevada by this agreement.

Defendants' argument would be stronger had the settlement agreement not identified the released Vanguard entity so definitively. The hundreds of pages of exhibits to these competing summary-judgment motions reflect that employees of the Vanguard companies were rarely specific about which company they were acting on behalf of or intending to bind. For example, the company's letterhead reads "Vanguard Integrity Professionals,"[39] Ringelberg's firm's invoices were addressed to "Vanguard Integrity Professionals,"[40] and Ringelberg's EEOC complaint identifies the company as "Vanguard Integrity Professionals."[41] But that routine ambiguity did not carry over into the settlement agreement, which specifically identifies only "Vanguard Integrity Professionals, Inc."

Nor can the type or breadth of claims released by this document be read to include claims against Vanguard Nevada. The scope of claims released is twofold. It includes "all claims, obligations, losses, and liabilities, known or unknown, asserted or unasserted of whatever nature, now existing or hereinafter arising":

---

[38] *Id.* at § 2.02(b)(i).

[39] *See, e.g.*, ECF No. 172-3 at 2.

[40] *See, e.g.*, ECF No. 175-5 at 2–54.

[41] ECF No. 175-16 at 2.

> 1. "relating in VENDOR's prior employment with and provision of services as a VENDOR to VANGUARD, and"
>
> 2. "related to VENDOR's relationship and/or interactions with BAILEY in any capacity."[42]

The agreement further clarifies that these "releases . . . extend and apply to and also cover and include all unknown, unforeseen, unsuspected, and unanticipated injuries, claims, damages losses, and liabilities, of any, arising out of or related to the subject matter of the giving rise to this Agreement, and are supported by the payment of adequate consideration."[43] And it states in bold that "the releases set forth herein are known by the Parties to be in full and final and complete compromise, settlement, release, accord and satisfaction, and discharge of all claims and counterclaims arising out of matters giving rise to this Agreement."[44] Those "matters" are alluded to in the "Recitals" section on page one of the agreement:

> 1.01 Whereas, VENDOR had been employed by VANGUARD from May 8, 2007 until May 31, 2010 and VANGUARD AND VENDOR believe there are claims related to that employment.
>
> 1.02 Whereas, VENDOR performed services for VANGUARD since June 1, 2010 until the complete cessation of the performance of those services on May 15, 2015.[45] VENDOR AND VANGUARD believe that there are claims related to performing those services;
>
> 1.03 Whereas, VENDOR had executed a personal loan with BAILEY on February 7, 2008 for $375,000.00 at 6%

---

[42] *Id.*

[43] *Id.* at § 2.03(c).

[44] *Id.* at § 2.03(d).

[45] The letter offering Ringelberg the General Counsel job starting May 8, 2007, is on Vanguard Integrity Professionals, Inc. letterhead. ECF No. 183-3 at 2. The Ringelberg Law LLC engagement letter states that "our firm has been engaged to represent Vanguard Integrity Professionals, Inc. . . ." ECF No. 172-1 at 2. IRS forms 1099 for that same period for Vanguard Integrity Professionals, Inc. reflect sums paid to Ringelberg Law, LLC, Ringelberg Consulting, and Steven Ringelberg. *See* ECF No. 175-25 at 2–9.

simple interest but received $370,135.40 at 6% simple interest.[46]

Although defendants baldly claim that this contract language releases claims against all of the Vanguard companies, nothing in these provisions can be reasonably interpreted to sweep in claims against unmentioned Vanguard Nevada. "A settlement agreement is a contract governed by general principles of contract law," and it must be construed from its "written language and enforced as written."[47] When a settlement agreement's language is unambiguous, it must be enforced as written.[48] The plain language of this agreement is clear and unambiguous: it does not release Ringelberg's claims against Vanguard Nevada.

Defendants also point to post-contracting statements by Ringelberg that they claim corroborate that the release extends to all Vanguard entities.[49] Even if they did, I could not consider this extrinsic evidence. "The parol evidence rule does not permit the admission of evidence that would change the contract terms when the terms of a written agreement are clear, definite, and unambiguous."[50] And here, they are.

Defendants suggest that the release extends to Vanguard Nevada under the "single business enterprise" theory.[51] This "theory is a common law doctrine that holds affiliated corporations liable for debts incurred in pursuit of a common business purpose."[52] The doctrine

---

[46] ECF No. 175-2 at 2.

[47] *The Power Co. v. Henry*, 321 P.3d 858, 863 (Nev. 2014).

[48] *Id*.

[49] *See* ECF No. 186 at 4.

[50] *Ringle v. Bruton*, 86 P.3d 1032, 1037 (Nev. 2004).

[51] ECF No. 186 at 10.

[52] Marilyn Montano, *The Single Business Enterprise Theory in Texas: A Singularly Bad Idea?*, 55 Baylor L. Rev. 1163, 1167 (2003).

has received limited recognition in Texas[53] and has not been adopted in Nevada. Defendants offer me no reason to conclude that the Nevada Supreme Court would adopt this doctrine, particularly in the converse way they suggest here—not for vicarious liability, but for vicarious release of liability.

Defendants also contend that the agreement necessarily released Ringelberg's claims against Vanguard Nevada because it released all claims against Bailey "in any and capacity," and because Bailey is the sole shareholder of Vanguard Nevada and the chairman of its board, releasing him was the same as releasing Vanguard Nevada.[54] But they offer no legal support for this distortion of the piercing-the-corporate-veil concept. Although the release of claims against Bailey "in any capacity" would bar claims against Bailey for actions he took as an agent of Vanguard Nevada, it cannot be reasonably interpreted to extend to claims against Vanguard Nevada. And although Nevada law recognizes that the release of an agent may operate to release a principal who is only vicariously liable for that agent's torts if the release so provides,[55] the bulk of Ringelberg's claims against Vanguard Nevada are not tort claims. Plus, this release's silence about claims against Vanguard Nevada means that the discharge of Bailey did not discharge Vanguard Nevada. And "neither a court of law nor a court of equity can interpolate in a contract what the contract does not contain."[56]

---

[53] *Id.*

[54] ECF Nos. 175, 186.

[55] *Van Cleave v. Gamboni Const. Co.*, 706 P.2d 845, 847 (Nev. 1985) (holding that the Uniform Contribution Among Tortfeasors Act "applies to vicarious liability situations, so that the release of an employee does not release a vicariously liable employer, unless the terms of the release document so provide.").

[56] *Traffic Control Servs., Inc. v. United Rentals Nw., Inc.*, 87 P.3d 1054, 1059 (Nev. 2004) (quoting *Reno Club v. Young Inv. Co.*, 182 P.2d 1011, 1017 (Nev. 1947)).

The net result of this contract-interpretation exercise is this: the settlement agreement unambiguously releases (1) all of Ringelberg's claims against Bailey related to Ringelberg's relationship or interactions with Bailey, and (2) all claims against Vanguard Inc related to Ringelberg's work, employment, and provision of services for the Vanguard companies, but it does not release Ringelberg's claims against Vanguard Nevada. When a contract is unambiguous like this one, the court can construe it as a matter of law on summary judgment.[57] So I grant summary judgment in favor of Vanguard Inc on all of Ringelberg's employment-law claims (claims two–four) and on his claims for breached promises to pay work-related benefits (claims five, six, and twelve), because they all relate to Ringelberg's employment or provision of services to Vanguard.[58] These conclusions also leave no disputed issues remaining in defendants' counterclaims related to the scope and enforcement of the settlement agreement. So, I also grant summary judgment in favor of Ringelberg on his motion for summary judgment on Vanguard Nevada's first, second, and third counterclaims,[59] and I grant summary judgment in favor of Vanguard Inc on those same claims.

---

[57] *See also Univ. of Nevada, Reno v. Stacey*, 997 P.2d 812, 814 (Nev. 2000) (holding that "[s]ummary judgment is appropriate when a contract is clear and unambiguous, meaning that the contract is not reasonably susceptible to more than one interpretation.").

[58] Ringelberg suggests that his Title VII retaliation claims based on Vanguard Inc's May 2015 failure to resume its services relationship with him is outside the scope of the release. But the scope of claims released against Vanguard Inc includes claims "of whatever nature, now existing or hereinafter arising, relating in [sic] [Vanguard Inc.'s] prior employment with and provision of services as a VENDOR to Vanguard," and section 2.03 further clarifies that the release includes such existing or future claims "arising out of *or related to the subject matter of the giving rise to* [sic] *this Agreement*. . . ." (Emphasis added). I find that these failure-to-recontract allegations are easily "related to" Ringelberg's prior provision of services.

[59] ECF No. 178.

### B. The employment claims against Vanguard Nevada

With Ringelberg's employment-law claims against Vanguard Inc barred, I next consider whether these claims can survive against Vanguard Nevada on this record. Ringelberg's first, third, and fourth claims for relief allege Title VII retaliation claims against Vanguard Nevada based on events that occurred between May and July 2015. [60] To state a Title VII claim, the plaintiff must be an employee of the defendant, and the defendant must be an employer as defined by the statute.

Even if I assume that Ringelberg was an employee rather than an independent contractor in May–July 2015, there is no genuine issue of fact to support Ringelberg's contention that Vanguard *Nevada* was his employer (or potential employer) at the time these alleged Title VII violations occurred.[61] The settlement agreement, which Ringelberg seeks to enforce by his claims in this case, contains the recitals that "VENDOR" Ringelberg "had been employed by" Vanguard Inc "from May 8, 2007 until May 31, 2010," and that, thereafter, he "performed services for" Vanguard Inc from "June 1, 2010 until the complete cessation of the performance of those services on May 15, 2015."[62] The engagement letter on Ringelberg Law LLC letterhead corroborates that the relationship was with Vanguard Inc. It states that "our firm has been engaged to represent Vanguard Integrity Professionals, Inc. . . ."[63] The letter is countersigned by Bailey as CEO of "Vanguard Integrity Professionals, Inc."[64] IRS 1099 forms for that same

---

[60] *See* ECF No. 87 at ¶¶ 152, 170, 178.

[61] ECF No. 183 at 17–18.

[62] ECF No. 175-2 at 2.

[63] ECF No. 172-1 at 2.

[64] *Id*. at 3.

period reflect that sums were paid to Ringelberg Law, LLC, Ringelberg Consulting, and Steven Ringelberg by Vanguard Integrity Professionals, Inc.[65]

Although Ringelberg highlights and declares that "From June 2010 to May 2015 all payments to [him] for compensation were charged by Defendants to accounts of Vanguard Nevada, not accounts of Vanguard INC.,"[66] he offers documents to support this proposition only through April of 2012—more than three years before the alleged Title VII violations happened.[67] The Ninth Circuit has recognized that "[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."[68] Because the record lacks a sufficient evidentiary basis for a reasonable fact finder to find that Ringelberg was an employee or prospective employee of Vanguard Nevada at the time of these

---

[65] *See* ECF No. 175-25 at 2–9.

[66] ECF No. 182-1 at 3, ¶ 14.

[67] Ringelberg cites to "Exhibit K and Fact 4" for this proposition. *See* ECF No. 183 at 18. But Exhibit K is Carlos Lescano's deposition testimony that supports only the fact that invoices in April 2011 and 2012 were "coded" to come out of Vanguard Nevada accounts. And "Fact 4" offers no additional evidence.

[68] *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), as amended (Apr. 11, 1997). Defendants also argue that Vanguard Nevada also did not qualify as an "employer" as defined by Title VII because this parent-company entity did not have the 15 employees needed to qualify for employer status. Ringelberg counters that the Vanguard companies collectively had approximately 50 employees, and because they all acted in the aggregate, their employee count should be similarly aggregated under the "single integrated employer" theory. ECF No. 183 at 19. But it would be incongruous to hold that the Vanguard entities are one and the same for purposes of imposing Title VII liability, but separate and distinct for Ringelberg's release of his employment-related claims. So, were I not entering summary judgment based on the absence of evidence that Vanguard Nevada was Ringelberg's employer, I would have entered it based on Vanguard Nevada's failure to qualify as an employer because it never had the requisite 15 employees. *See* ECF No. 175-26 at 3, ¶¶ 8 & 10 (Shoup Aff) (detailing that Vanguard Nevada did not have fifteen or more employees during the relevant time periods); *see also* 42 U.S.C.A. § 2000e(b) ("The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . .").

14

alleged Title VII violations, Vanguard Nevada is entitled to summary judgment on Ringelberg's first, third, and fourth claims for relief.

### C. Ringelberg's claims for promised benefits

In his fifth claim for relief, Ringelberg alleges that he was entitled to bonuses and accrued vacation pay from the defendants; in his sixth claim he alleges that Bailey, on behalf of Vanguard Nevada, made a "word bond" promise to issue him 10% of Vanguard Nevada's stock; and in his seventh claim, he repleads both claims with a promissory-estoppel theory.[69] He turns these promises into an alternative intentional-misrepresentation claim in his twelfth claim for relief.[70] Because I've already entered summary judgment in favor of Vanguard Inc based on the settlement agreement,[71] I consider the remaining viability of these claims only against Vanguard Nevada.

Defendants argue that Ringelberg's claims for unpaid bonuses fail because that benefit was part of his compensation package only when he was an employee of Vanguard Nevada from 2007–2010 and before he transitioned to payment as an independent contractor.[72] They add that he expressly waived any entitlement to bonuses in some 2015 email exchanges. But defendants grossly overstate these documents. The email statements[73] they reference cannot reasonably be construed as waivers, let alone conclusive evidence of waivers such that the bonus claim is

---

[69] ECF No. 87 at 24–28.

[70] *Id*. at 32.

[71] *See supra* at p. 12.

[72] ECF No. 175 at 20; ECF No. 175-3 (engagement letter).

[73] This assumes that I can even conclude that ECF No. 175-28 (Defendants' Exh BB) is an email exchange. There are no hints on that document about what it is, when or how it was created, or who created it.

barred.[74]  The engagement letter signed by both Ringelberg and Bailey in 2010 purports to state "the billing policies and practices that will apply to the engagement," and it does not mention bonuses.[75]  But the emails from June 2015 between Ringelberg and Vanguard representatives propose a swap of the unpaid bonuses for an outstanding loan balance. [76]  A reasonable juror could infer from the fact that unpaid bonuses remained a negotiation point in 2015 that the obligation did not cease.  So Vanguard Nevada has not carried its burden to demonstrate an absence of genuine issues of fact with respect to Ringelberg's fifth claim for relief.

Defendants contend that the 10% stock promise is unenforceable because it lacked consideration.  They point to Ringelberg's deposition admission that Bailey promised the stock as "a reward for [his] past labors and an incentive for [him] to keep working."[77]  Ringelberg argues that he did exchange consideration for this benefit—he abandoned "his search for alternative employment and continued to serve" the company.[78]  In his declaration, Ringelberg states that he told Bailey in March 2014 that he "was considering resigning from the company" because he "was working to [sic] many hours" and his "bonuses had not been paid."[79]  Bailey's "response on March 14, 2014, was to ask [Ringelberg] to stay until [Bailey] could return to

---

[74] *See* ECF No. 175-23 (Defendants' Exh W) at VIP 001018 (suggesting a "swap" of the bonuses owed for loan forgiveness).

[75] ECF No. 175-3 at 3–4.

[76] ECF No. 175-23 (Defendants' Exh W) at VIP 001018.  Ringelberg's representation in his declaration at ¶ 33 that he told Bailey in March 2014 that he was considering resigning because, *inter alia*, his "bonuses had not been paid" further supports this inference and precludes summary judgment on Ringelberg's fifth claim for relief.  *See* ECF No. 183-1 at 4.

[77] ECF No. 175 at 21.  Defendants also argue in a single sentence and a footnote that this promise is unenforceable "as a violation of New York Rule of Professional Conduct 1.8."  ECF No. 175 at 22 & n.16.  To quote the late Justice Scalia, "[t]his cameo hardly qualifies as 'discussion.'"  *CIGNA Corp. v. Amara*, 563 U.S. 421, 447 n.1 (2011) (Scalia, J., concurring).

[78] ECF No. 183 at 23.

[79] ECF No. 183-1 at 4.

work, and tell [Ringelberg] that Vanguard Nevada would issue 10% of its stock to [him] as a reward for both [his] past performance and for staying."[80]

Nevada law recognizes that continued work after a change in contract terms "constitutes sufficient consideration for the modification."[81] And even if there were no consideration given for this benefit, that would not be fatal because Ringelberg has also pled this claim based on a promissory-estoppel theory. "The doctrine of promissory estoppel, which embraces the concept of detrimental reliance, is intended as a substitute for consideration. . . ."[82] Ringelberg's sworn statement that he abandoned his plan to leave the Vanguard organization and work elsewhere in reliance on the stock promise is sufficient to defeat summary judgment on his sixth claim for breach of the "word bond" promise of 10% of Vanguard Nevada's stock.[83]

Finally, I consider Ringelberg's twelfth cause of action in which he alternatively claims that Bailey's promises of stock, bonuses, and vacation pay were intentional misrepresentations. "A false representation made by the defendant, knowledge or belief on the part of the defendant that the representation is false—or, that he has not a sufficient basis of information to make it, an intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation, justifiable reliance upon the representation on the part of the plaintiff in taking action or refraining from it, and damage to the plaintiff, resulting from such reliance, are the

---

[80] *Id*. at 5.

[81] *Baldonado v. Wynn Las Vegas, LLC*, 194 P.3d 96, 105 (Nev. 2008).

[82] *Vancheri v. GNLV Corp.*, 777 P.2d 366, 369 (Nev. 1989); *Pink v. Busch*, 691 P.2d 456, 459 (1984) ("Promissory estoppel, of course, can be used as a 'consideration substitute.'").

[83] Because promissory estoppel is a consideration substitute and not an independent claim for relief, should this case proceed to trial, the court will consider Ringelberg's seventh claim for relief as an alternative theory in support of his fifth and sixth claims, and not as a separate cause of action.

elements of intentional misrepresentation."[84]  Defendants argue that Ringelberg has produced no

evidence that these alleged promises were false when made.[85]  Ringelberg points to no evidence

in response.  He argues only that if his "Sixth Claim is somehow denied," he should get to pursue

the stock under this misrepresentation theory.[86]  Because Ringelberg has not offered any

evidence that the promises were false when made, I grant summary judgment in favor of

Vanguard Nevada on his twelfth claim for relief.

### D.  Ringelberg has abandoned his wiretapping and slander claims.

In his ninth claim for relief, Ringelberg alleged a claim for "invasion of privacy and

unauthorized electronic and computer surveillance under federal law."[87]  He expressly withdraws

this claim in his opposition to the defendants' motion for summary judgment.[88]

Ringelberg's tenth claim for relief is for slander.[89]  Defendants move for summary

judgment on this claim, arguing that the claim is barred by the settlement agreement and

precluded by intracorporate privilege because the statements were made only to Vanguard

employees or privileged persons.[90]  They offer the declaration of Nancy Baird to support those

representations.[91]  Ringelberg offers no response to these points.  Because defendants'

submission of evidence to support their defense to this claim shifted the burden to Ringelberg to

---

[84] *Lubbe v. Barba*, 540 P.2d 115, 117 (Nev. 1975).

[85] ECF No. 175 at 23.

[86] ECF No. 183 at 26.

[87] ECF No. 87 at 28–29.

[88] ECF No. 183 at 29 n.17.

[89] ECF No. 87 at 30.

[90] ECF No. 175 at 28–29.

[91] ECF No. 175-6.

identify genuine issues of fact, and he failed to do so, defendants are entitled to summary judgment on Ringelberg's tenth claim for relief.

### E.    Invasion of privacy

In his eighth claim for relief, Ringelberg pleads a claim for invasion of privacy based on his allegation that "from time to time between May 15, 2015 and to some time currently unknown to Plaintiff," the defendants "engaged private detectives in order to conduct surveillance of Plaintiff" using "long-range parabolic microphones . . . to listen in on [his] personal conversations," and put a tracking device on his car.[92]  He claims these violations give him a "private right of action for eavesdropping, invasion of privacy and unlawful electronic surveillance."[93]  Defendants argue that the only evidence Ringelberg has offered of this invasion is that he "theoretically witnessed private investigators recording him . . . 'in the parking lot of the Village Pub, on May 19, 2015,'" but he "never was able to verify that he was being recorded."[94]  Even if he were recorded at that time, they contend, he lacked a reasonable expectation of privacy in his public-parking-lot conversations.[95]

But the record goes beyond a parking-lot suspicion.  Private investigator Hal DeBecker testified that he installed a tracking device on Ringelberg's car on about June 15, 2015, at the direction of a Vanguard attorney.[96]  This, Ringelberg claims, intruded upon his seclusion.[97]  Defendants contend that Ringelberg has impermissibly shifted his claims because, "until now,"

---

[92] ECF No. 87 at 17.

[93] *Id*. at 28, ¶ 237.

[94] ECF No. 175 at 25.

[95] *Id*.

[96] ECF No. 184-7 at 8–12.

[97] ECF No. 183 at 27.

he had only been claiming that the tracking violated NRS §200.650, a state criminal statute.[98]

But his claim was broader than that. Ringelberg put defendants on notice in paragraph 237 that

his claim was also based on a "private right of action for . . . invasion of privacy . . . ."[99] In

Nevada, "[t]he tort of invasion of privacy embraces four different tort actions"; intrusion upon

seclusion is one of them.[100] So Ringelberg is not precluded from now arguing that his eighth

claim for relief is one for intrusion upon seclusion.

　　　　Finally, defendants argue that Ringelberg cannot prevail on an intrusion-upon-seclusion

claim based on the GPS tracking device because he had no reasonable expectation of privacy on

the public or private streets he traveled or in his driveway. But the United States Supreme

Court's decision in *United States v. Jones*, in which it held that monitoring a person's

movements using a GPS tracking device implicates the Fourth Amendment, suggests that

Ringelberg had a reasonable expectation of privacy in his daily movements in his car.[101] So

defendants have not demonstrated any basis to grant summary judgment on this claim, and it will

proceed against Vanguard Nevada and Vanguard Inc.[102]

---

[98] ECF No. 189 at 14.

[99] ECF No. 87 at 28, ¶ 237.

[100] *Franchise Tax Bd. of State of California v. Hyatt*, 407 P.3d 717, 733 (Nev. 2017), cert. granted sub nom. *Franchise Tax Bd. of California v. Hyatt*, 138 S. Ct. 2710 (2018).

[101] *United States v. Jones*, 565 U.S. 400, 404–405 (2012); *see also Carpenter v. United States*, 138 S. Ct. 2206, 2215 (2018) (summarizing *Jones* and explaining that "Since GPS monitoring of a vehicle tracks 'every movement' a person makes in that vehicle, the concurring Justices concluded that 'longer term GPS monitoring in investigations of most offenses impinges on expectations of privacy'—regardless whether those movements were disclosed to the public at large.").

[102] This claim is not barred by the settlement agreement's release because it only released claims against Vanguard Inc related to Ringelberg's employment and provision of services. *See* ECF No. 175-2 at 3, § 2.02(b)(i). Defendants have not demonstrated that this intrusion-upon-seclusion claim has anything to do with those topics.

### F. Ringelberg's claim for breach of the settlement agreement

The last claim I address on summary judgment is Ringelberg's eleventh claim for relief, in which he alleges that Vanguard Inc has breached the settlement agreement by (1) not returning his property, (2) making disparaging remarks about him, and (3) filing legal actions against him based on his pre-July 2, 2015, conduct.[103] Vanguard Inc argues that it deserves summary judgment on this claim because Ringelberg signed a receipt for returned property and its failure to return other property cannot be considered a material breach.[104] Vanguard Inc says nothing about the other two breach theories raised by this cause of action. So, I consider its argument one for partial summary judgment on this claim.

No relief is warranted on this claim. Though Ringelberg did sign a list of returned items, the document does not reflect in any way that it is a list of all items due under the contract. It says merely, "I, Steven Ringelberg, confirm that I have received the items listed below from Vanguard Integrity Professionals, Inc. on May 19, 2015."[105] It is impossible to tell whether the return of the items on that list satisfied Vanguard Inc's obligation under the settlement agreement. So I deny Vanguard Inc's request for summary judgment on Ringelberg's eleventh claim for relief.

## II. Defendants' motion to bifurcate [ECF No. 112]

Months before they moved for summary judgment, the Vanguard defendants moved to bifurcate trial into two phases: (1) enforceability of the settlement agreement, and (2) liability for

---

[103] ECF No. 87 at 31–32.

[104] ECF No. 175 at 30.

[105] ECF No. 175-30 at 2.

damages.[106]  Because this summary-judgment order resolves the question of the enforceability of the settlement agreement, I deny the motion to bifurcate as moot.

### III.    Motions to seal [ECF Nos. 116 and 176]

Defendants move to seal a handful of exhibits.  They first ask to seal the settlement agreement, which is attached as Exhibit B to the defendants' motion to bifurcate.[107]  They then ask to seal the same settlement agreement attached as Exhibit A to their motion for summary judgment; a string of emails negotiating terms of that agreement, which are attached to their motion for summary judgment as Exhibit W; and two deposition transcripts (purportedly) attached as Exhibits G and L.[108]  Plaintiff opposes the motion to seal the settlement agreement attached to the motion to bifurcate because nearly the entire document has been disclosed in documents already publicly filed in this case.[109]  He does not oppose the motion to seal exhibits to the defendants' motion for summary judgment.

Unless a particular court record is one that is "traditionally kept secret," there is a "strong presumption in favor of access" to the record.[110]  So, parties moving to seal documents in support of dispositive motions have a high burden.  They must overcome this presumption by "articulat[ing] compelling reasons supported by specific factual findings" that outweigh the

---

[106] ECF No. 112.

[107] ECF No. 116.

[108] ECF No. 176.

[109] ECF No. 134.

[110] *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (internal citations and quotations omitted).

traditional right of public access.[111]  This is true even for documents "previously filed under seal or protective order."[112]

Having thoughtfully considered the sealing requests, the documents proposed for sealing, and the record in this case, I find that defendants have failed to meet the "compelling reasons" standard for sealing any of these documents.  First, nearly the entirety of the settlement agreement has already been publicly disclosed in filings in this case, so there are only a handful of provisions that remain undisclosed.[113]  The confidentiality provision in the settlement agreement is the only basis that defendants articulate for sealing it.[114]  But the confidentiality provision actually contains an express exception in the event of an enforcement action.  It states, "This agreement and the terms hereof shall be treated by all Parties as strictly confidential and shall not be disclosed by any party to any person or entity except . . . as required to enforce this Agreement . . . ."[115]  Because both sides in this case pled claims either alleging a breach of this agreement or seeking to enforce its provisions, the agreement itself is central to this case and the court's resolution of their competing summary-judgment motions.  Defendants have not articulated compelling reasons to overcome the presumption of public access to this document.

Defendants' justification for sealing Exhibit W is that "it contains emails regarding the negotiations between the parties leading to the finalization and execution of the Settlement Agreement as well as draft forms of the Settlement Agreement."[116]  Because I do not find that

---

[111] *Id.* (internal citations and quotations omitted).

[112] *Id.* at 1179.

[113] *See* ECF No. 130 (identifying those disclosed documents).

[114] ECF Nos. 116 and 176.

[115] ECF No. 175-2 at 5, § 2.05.

[116] ECF No. 176 at 4.

the settlement agreement should be sealed, and defendants' articulated reason to seal Exhibit W is entirely derivative of their argument for sealing the settlement agreement, I find that they have not met their burden for sealing Exhibit W either.

Finally, defendants move to seal Exhibits G and L, which they contend are excerpts from the deposition transcripts for Bailey and Ringelberg.[117] First, there is no Exhibit L. The document digitally attached to the motion for summary judgment as Exhibit L is actually Exhibit K.[118] But regardless of what that document was intended to contain, defendants have failed to articulate compelling reasons to seal deposition testimony. The only reason they give is that "the parties agreed" that "the transcripts and certain of the exhibits were to remain Confidential," and there's a provision in their protective order designating them as confidential.[119] But "because we think they should be confidential and have a protective order" does not qualify as a "compelling reason" to keep deposition transcripts secret under the Ninth Circuit standard. The protective order itself contains no compelling-reason finding, so the fact that these documents are covered by a protective order cannot be bootstrapped into a compelling reason that rebuts the presumption of access.[120] Accordingly, defendants have failed to carry their burden to seal Exhibits G & L.

Curiously, the parties sealed far more than the few exhibits that are the subject of defendants' sealing motions. Defendants filed under seal the entirety of their motion for summary judgment and all 30 of its exhibits.[121] They also filed the 7 exhibits to their reply brief

---

[117] *Id*. at 4.

[118] *See* ECF No. 175-12.

[119] ECF No. 176 at 4.

[120] *See Kamakana*, 447 F.3d at 1183.

[121] *See* ECF No. 175–175-31.

under seal.[122]  Plaintiff sealed the exhibits to his motion for summary judgment on defendants' counterclaims,[123] all 15 exhibits to his opposition to defendants' motion for summary judgment,[124] and the 8 exhibits to his reply in support of his motion for summary judgment.[125] Yet, he did not move to seal a single one of these documents.

Local Rule IA 10-5(a) states that "papers filed with the court under seal must be accompanied by a motion for leave to file those documents under seal.  If papers are filed under seal under prior court order, the papers must state on the first page, directly under the case number: 'FILED UNDER SEAL UNDER COURT ORDER (ECF No. __).'"  "The court may direct the unsealing of papers filed under seal, with or without redactions, after notice to all parties and an opportunity to be heard."[126]  None of these documents filed without an accompanying motion to seal reflects that it was filed under seal by court order.  Accordingly, I now give the parties ten days to show cause why these documents—ECF Nos. 175–175-31, 179, 184–184-15, 188, and 190—should not be unsealed in their entirety.  When reviewing these documents, the parties should pay careful attention to whether any of them needs to be redacted for personal identifiers (such as tax identification numbers).  *See* Local Rule IC 6-1 for procedures and categories of redactable information.[127]  If cause is not shown by the deadline (using the standards in *Kamakana v. City and County of Honolulu*), I will instruct the Clerk of

---

[122] ECF No. 190.

[123] ECF No. 179.

[124] ECF No. 184–184-15.

[125] ECF No. 188.

[126] LR IA 10-5(b).

[127] Note that LR IC 6-1(c) states, "The responsibility for redacting these personal identifiers rests solely with attorneys and the parties.  The clerk will not review each filing for compliance with this rule."

Court in a separate order to unseal these documents in their entirety; they will remain sealed until that time.

**Conclusion**

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment **[ECF No. 175] is GRANTED in part and DENIED in part**;

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment as to Defendant Vanguard Integrity Professionals-Nevada, Inc.'s First, Second, and Third Counterclaims **[ECF No. 178] is GRANTED in part and DENIED in part**.

**The net result of these cross-motions for summary judgment is that:**

a.    Ringelberg's ninth claim for relief is deemed withdrawn;

b.    Summary judgment is entered in favor of Ringelberg on Vanguard Nevada's first, second, and third counterclaims;

c.    Summary judgment is entered in favor of Vanguard Inc. on its first, second, and third counterclaims; and on Ringelberg's second, third, fourth, fifth, sixth, tenth, and twelfth claims against it; and

d.    Summary judgment is entered in favor of Vanguard Nevada on Ringelberg's first, third, fourth, tenth, and twelfth claims;

**This case proceeds on:**

a.    Ringelberg's fifth, sixth, and eighth claims against Vanguard Nevada;

b.    Ringelberg's eighth and eleventh claims against Vanguard Inc.; and

c.    Vanguard Nevada's and Vanguard Inc's fourth, fifth, and sixth counterclaims.[128]

---

[128] Their seventh counterclaim is for "promissory estoppel," which is not an independent claim for relief. *See supra* note 80.

This order results in the entry of partial summary judgment only, and the court does not by this order direct—or intend to direct—the entry of final judgment on any claim or as to any party.

IT IS FURTHER ORDERED that defendants' motion to bifurcate **[ECF No. 112] is DENIED**.

IT IS FURTHER ORDERED that Defendants' Motion to Seal Exhibit B to Motion to Bifurcate **[ECF No. 116] and** Defendants' Motion to Seal Exhibits A, G, L, and W to their Motion for Summary Judgment **[ECF No. 176] are DENIED. The Parties have until December 13, 2018, TO SHOW CAUSE why documents filed at ECF Nos. 175–175-31, 179, 184–184-15, 188, and 190 should not be unsealed in their entirety.**

Finally, the parties are HEREBY ORDERED to a settlement conference with the magistrate judge, and **THIS CASE IS REFERRED to the magistrate judge to schedule a settlement conference.**

Dated: December 3, 2018

_____

U.S. District Judge Jennifer A. Dorsey